WILLIAMS v. JACKSON and Others.

ESTOPPEL IN PAIS.—Where the obligor in a title bond is called upon by one who is about to purchase the interest of the obligee in the bond and lands, to know the amount of purchase money yet due thereon, and by his words or conduct induces the proposed purchaser to believe that only a certain sum is due, he is, after a purchase upon the faith of his statements, estopped to assert that a larger sum is due.

APPEAL from the *Madison* Circuit Court.

ELLIOTT, J.—*Hannah M. Andis* and others, the minor children and heirs at law of *John* and *Eliza A. Andis*, deceased, by *Samuel Martin*, their next friend, filed a complaint against *Addison D. Williams* and *Andrew Jackson*, to compel the specific performance of a written contract for the conveyance of certain real estate.

The facts stated in the complaint, in substance, are these: On the 10th of *December*, 1860, said *Williams*, and *John* and *Eliza A. Andis* entered into a contract in writing, by which *Andis* and wife sold, and agreed to convey to *Williams*, on or before the 4th of *July*, 1861, lot number 25, in the southwest square of the town of *Anderson*, *Indiana*, of which the said *Eliza A.* was seized in her own right. In consideration of which *Williams* sold, and agreed to convey to *Andis* and wife, on or before the 4th of *July*, 1861, lot number 7, in *Jackson's* second addition of out-lots to the said town of *Anderson*, with an unfinished house thereon, and certain building materials designed for the same, and also to transfer an agreement made by *Williams* with one *Tillson*, by which the latter was to do the carpenter work on said house, amounting to the sum of $350, for which *Williams* was to convey to him lot number 15, in *Jackson's* second addition to the town of *Anderson*. It was further agreed, that in the event that *Tillson* failed to do said carpenter work, then *Williams* should convey said lot 15 to said

*John* and *Eliza A. Andis;* that *Tillson* did fail to perform the carpenter work on said house, or any part thereof, and it was subsequently done by said *Andis,* whereby said *John* and *Eliza A.* became entitled to a conveyance for said lot 15; that each of the parties to said written contract took possession under the same, of the premises therein described, to be conveyed to them respectively; that said *John* and *Eliza A. Andis,* on the 2d day of *July,* 1861, signed, sealed and acknowledged a proper deed for said lot number 25, in all respects in accordance with their contract, except that at the request of said *Williams,* it contained the name of his wife, *Virginia Y. Williams,* as the grantee therein, which they tendered to said defendant *Williams,* on the 4th day of *July,* 1861, and demanded that he should convey to them said lots numbered 7 and 15, which he then, and ever since, failed and refused to do. The deed from *Andis* and wife to *Williams'* wife was brought into court.

It is further alleged in the complaint, that *Williams* had no legal title to said lots 7 and 15, either at the date of the contract or the commencement of the suit; that he held the same under a contract of purchase from the defendant *Jackson,* who still held the legal title thereto, the conditions of which were unknown to the plaintiffs; but it is charged that a large sum, to-wit, $300, of the purchase money therefor remained due to *Jackson* from *Williams,* and that *Jackson* refused to convey the lots until said purchase money was paid; that *John Andis* died in *August,* 1862, and *Eliza A. Andis* died in *September,* 1862, leaving the plaintiffs their only children and heirs at law. Prayer, that an account be taken of the amount remaining due to *Jackson* on the purchase money of lots 7 and 15, and that *Williams* be decreed to pay the same, and, upon such payment, that *Jackson* be required to convey said lots to the plaintiffs; and that a commissioner be appointed to convey, for and on behalf of the plaintiffs, said lot number 25 to said *Williams;* or, if said *Williams* should fail to pay the purchase money re-

maining due to *Jackson* on said lots number 7 and 15, and by reason thereof said lots are sold for the payment thereof, that a rescission of the contract between said *Williams* and *John* and *Eliza A. Andis* be decreed, and the plaintiffs restored to the possession of said lot number 25, and for general relief.

*Jackson* answered the complaint, alleging that he sold said lots 7 and 15, the proper description of which is, "outlots numbered 7 and 15, south of *The Cincinnati and Chicago Railroad*, as laid out by *Andrew Jackson*, *July* 10th, 1859," to one *Alfred Ealy*, and executed to him a bond, conditioned for a conveyance upon the payment of the purchase money, for which said *Ealy* executed his notes, payable without relief from valuation or appraisement laws; that he did not know who then held the bond, but he avers that there still remained due, to him, as a part of said purchase money, including interest to the date of the answer, the sum of $324; that said *Ealy* is wholly insolvent, and that he, *Jackson*, had always been, and then was, ready to convey said lots to the proper person, upon the payment of said purchase money; and by way of cross-complaint, prays that the equitable interest of the other parties to the suit in said lots be sold to pay said sum of $324, and for other proper relief.

*Williams* answered in two paragraphs:

1. A general denial of the allegations of the complaint.

2. In the nature of a cross-complaint, by which he admits the execution of the contract between him and *John* and *Eliza A. Andis*, referred to in the complaint, and that he thereby sold and agreed to convey said lots 7 and 15 to said *Eliza A.*, as alleged; and alleges that said *Jackson* had theretofore sold said lots to *Ealy*, and put him in possession thereof; that *Ealy* retained said possession until the 10th of *September*, 1860, when he sold the same to the defendant *Williams*, and assigned to him the bond of said *Jackson* therefor, and delivered to him, *Williams*, possession of said lots; that when he executed the contract referred to in the complaint, he, *Williams*, surrendered the possession of said lots to *Eliza*

*A. Andis*, who continued to hold the same at the time of her death, and had made improvements thereon, and that the plaintiffs, as her heirs, still continue in possession thereof; that at the time of the sale to *Eliza A. Andis*, there was due and owing from said *Ealy* to *Jackson*, on the purchase money for said lots, the sum of $90, and no more, the residue thereof having been paid by said *Ealy;* that on or about the 10th of *September*, 1860, an arrangement was made between *Jackson* and the defendant *Williams*, by which the latter took up the note of said *Ealy* for $90, and executed to *Jackson* his own note in lieu thereof, for the same sum; that said sum of $90, with interest thereon to the date of said answer, amounting in the aggregate to the sum of $104, was all that then remained due to *Jackson* for said lots; which sum he brought into court for said *Jackson*, and thereupon prayed that on the final hearing the court would decree that *Jackson* should convey said lots to the plaintiffs, and that a commissioner should be appointed to convey said lot number 25 to said *Williams*.

*Jackson* replied, denying the allegations of the answer of *Williams*, so far as they were inconsistent with his answer.

The plaintiffs replied in denial of the answers and cross-complaints of both defendants.

By agreement of the parties, the issues were submitted to the court for trial, without a jury. The court found, as between the defendants *Jackson* and *Williams*, that there was due to *Jackson* the sum of $482 32, on the purchase money of said lots 7 and 15. *Williams* moved the court for a new trial, on the ground that the finding of the court was contrary to law and the evidence in the case. But the court overruled the motion, and thereupon rendered a final decree, declaring said sum of $482 32 a lien, in favor of *Jackson*, on said out-lots 7 and 15; and, in default of the payment thereof, together with interest and costs, that said lots be sold, on a certified copy of said decree, for the payment of said sum, interest and costs, without appraisement,.

and continued the cause as between the plaintiffs and the defendant *Williams*. To all of which *Williams* excepted, and appeals to this court.

After the judgment was rendered, *Jackson's* attorney remitted, on the record, $188 42 thereof.

The evidence, which is before us, does not sustain the answer of *Jackson;* nor does it sustain the finding of the court. *Jackson* testified, in his own behalf, that he sold said lots 7 and 15 to *Alfred Ealy*, and gave him a title bond therefor. A copy of the bond is set out. It is in the penal sum of $405, and is dated *July* 4th, 1859. The condition recites the sale of the lots to *Ealy*, one for $280, and the other for $125, and then proceeds as follows: "Payments to be made as per promissory notes, bearing six per cent., due in equal annual installments, with interest from the date hereof. All taxes to be paid by said *Ealy* after 1858, to-wit, the present year's taxes, and all hereafter. Deed in fee to be made on final payment."

*Jackson* further testified that *Ealy* gave him in payment for said lots two notes on *R. A. Bartlett* for $133 07 each, secured by a mortgage, one due *April*, 1860, and the other in *December* of the same year, both bearing interest, but that they were taken at $266 14; that *Ealy* also gave him his own note, due *July* 4th, 1862, for $177 40; that he afterwards sold *Ealy* a strip of ground between a street and the lots as then described, for $15, which was not paid; that *Ealy* subsequently sold a part of the ground to one *Burk*, and gave him *Burk's* note for $98 50, which he collected and applied on *Ealy's* note; that *Ealy* then sold the lots in controversy to the defendant *Williams*, and left a note signed by *Williams*, at *Nichols & King's*, for a little less than $100, to be exchanged with him, *Jackson*, for *Ealy's* note held by him; that he made the exchange, and afterwards received the money on *Williams'* note, amounting to $110, including interest; that when the notes on *Bartlett* became due he foreclosed the mortgage, had the property sold, and bought it in at $100, paid the costs, $16 35, and credited

the residue on the judgment. He admits that the $15 due from *Ealy* for the strip of ground between the lots, as sold, and the street, was included in the note given him by *Williams*. The note given by *Williams* was then shown to *Jackson*, and he admitted that it was in his own hand writing. He further testified that *Bartlett* never paid him anything on his notes.

*Williams*, the appellant, testified that he and *Ealy* agreed upon the terms of the purchase of the lots; that he was to pay *Ealy* therefor the sum of $700, out of which he was to pay *Jackson* what *Ealy* owed him on the purchase money, which *Ealy* represented to be $75; that before he closed the trade with *Ealy*, he called on *Jackson* and told him he was about to trade for the lots, and wished to know of him how much was still due from *Ealy* for the purchase money, telling him at the same time that *Ealy* claimed that it was only $75, and that he, *Williams*, if he made the purchase, was to pay it, and had promised *Ealy* that he would take up his note and give his own to *Jackson* in its stead; that he further told *Jackson* that *Ealy* represented that the $75 was all the incumbrance there was on the property; that he did not wish to trade blindly, and had therefore called on him to know what was the true amount he held against the property; that *Jackson* replied that he could not then tell the exact amount, but that it was not much, and that he would look it up and give him, *Williams*, the amount; that soon after this conversation with *Jackson*, *Ealy* came to him with a note in the hand writing of *Jackson*, and payable to him, for the sum of $92 88, to be signed by him, *Williams*; that *Ealy* gave as a reason why the note was for more than $75, that *Jackson* had included in it $15 for the small strip of ground; that *Ealy* arranged that with him, *Williams*, in another way, and they concluded the trade, and *Ealy* assigned him *Jackson's* bond. He further testified that he knew nothing of the *Bartlett* notes, and that *Jackson* did not intimate to him that he claimed any other lien on the property except the balance due on *Ealy's* note, for

which he subsequently executed his own note to *Jackson;* that *Ealy* was irresponsible, and he would not have made the trade with him had he known that *Jackson* claimed any other lien on the lots.

*Jackson,* in rebutting, testified that he took the *Bartlett* notes "as he took the other notes—not as cash, but simply as a cash note—not as a payment in cash on the land, but only in place of *Ealy's* notes." But he did not deny the conversation with *Williams,* as testified to by the latter, nor offer any explanation thereof.

From the conversation between *Jackson* and *Williams,* testified to by the latter, *Williams* was clearly justified in the conclusion, when *Ealy* presented him the note drawn by *Jackson* for $92 88, that that amount was all that remained due to *Jackson* on the purchase money. *Williams* had told *Jackson* that he was about to trade for the property, and if he did so, that he would become responsible to him for the unpaid purchase money, and hence he wished to know what amount *Jackson* held against the property; telling him, at the same time, that he was informed by *Ealy* that the amount was only $75. *Jackson* replied that it was not much, but he would look up the amount and inform *Williams* thereof, and subsequently sent him the note for $92 88, which he admits included the $15 for the small strip of ground. Under these circumstances, *Williams* could only understand that the note covered all the liens *Jackson* claimed on the property; and, if he can now set up a lien for the balance due on the *Bartlett* judgment, it will enable him to perpetrate a direct fraud on *Williams.* This, the law will not permit. If he intended to assert such a claim, he should have done so when *Williams* called on him to know what claims he held against the property, or at least before he took *Williams'* note, and thereby induced him to purchase the lots of *Ealy,* and having been silent then, he is estopped from asserting the claim now, when to do so would be a fraud on *Williams.* This is too familiar a principle of law to need the citation of authorities to support it.

The judgment is reversed, with costs, and the cause remanded for further proceedings in conformity with this opinion.

*H. Craven* and *A. D. Williams*, for appellant.

*J. Davis*, for appellees.